IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DARRELL W. HEARD, #370271          )
                                  )
        Plaintiff,                )
                                  )
v.                                )          No. 3:15-cv-00172
                                  )
LESLIE CRUMPTON *et al.*,         )          Judge Trauger
                                  )
        Defendants.               )

MEMORANDUM OPINION

Plaintiff Darrell Heard, a state prisoner incarcerated at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed a complaint in this court under 42 U.S.C. § 1983, asserting that his constitutional rights were violated when he was denied a specific job placement. The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"). For the reasons set forth herein, the complaint will be dismissed in part.

I.      Statement of Facts

The plaintiff alleges that on April 23, 2014  he was scheduled, along with two other inmates, for a job interview with Leslie Crumpton for placement at Tennessee Cook Chill, a food processing plant operated by TRICOR.[1] Crumpton informed him on the day of the interview that Christy Mathis, Job Coordinator at Charles Bass Correctional Complex, had called her at home the previous night and told her to cancel the plaintiff's interview because his charge of conviction made him ineligible. Crumpton told the plaintiff she did not agree with Mathis's assessment but that it was not "her call." (ECF No. 1, at 4.) The plaintiff challenges prison authorities' decision not to allow him to be considered for this job. He names as defendants the following: Leslie Crumpton, who apparently works or volunteers for TRICOR; Christy Mathis; Lt. Gregory Leonard; Sgt. Kayser Nolton, who signed off on the initial denial of the plaintiff's grievance (ECF No. 1, at 38); Warden Wayne Carpenter; Michael Holloway; Stevenson Nixon;

---

[1] TRICOR means "Tennessee rehabilitative initiative in correction." Tenn. Code Ann. § 41-22-402(3). It is a legislatively created program that provides jobs and training for inmates, among other things. *Id.*

Jason Woodall, TDOC Deputy Commissioner of Operations; Benjamin Bean; TDOC Commissioner Derrick Schofield; and David Harp.

The plaintiff has clearly exhausted his administrative remedies regarding this claim. He filed an initial grievance in or around May 2014, which was denied. (*See* ECF No. 1, at 23.) He appealed that denial, and a hearing was conducted before the grievance committee on November 20, 2014. According to the grievance-hearing minutes attached to the complaint, RMSI Classification Coordinator Bill Smith testified on behalf of the plaintiff at the hearing that the plaintiff's position was correct, that he met all the criteria for the job listed in the memo posting the job, and that typically, "Anybody that RMSI has sent to Cook Chill in the past hasn't been trustee until they pas[s] the test and [are] accepted. Then we do a re-class and change their custody level." (ECF No. 1, at 21.) After the hearing, the grievance committee agreed with the plaintiff and recommended that he be re-evaluated and considered for the job placement. (ECF No. 1, at 9.) Warden Carpenter, however, rejected the recommendation based on a finding that the plaintiff did not have the correct custody level. (*Id.*) The plaintiff appealed the decision but, on January 6, 2015, Jason Woodall affirmed the denial of the grievance on the basis that the plaintiff "does not have the correct custody to be placed on TRICOR job register." (ECF No. 1, at 8.)

The plaintiff asks the court to rule in his favor regarding his "discrimination suit and civil rights violations," "[a]ward legal fees, compensatory damages as well as back pay starting on April 23, 2014," and "[p]unish anyone who committed official misconduct." (ECF No. 1, at 5.)

**II.     Standard of Review**

Under the PLRA, the court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A(a), or challenges the plaintiff's conditions of confinement, 42 U.S.C. § 1997e(c). After conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A(b); 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks

the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.    Discussion

The plaintiff seeks to bring suit under 42 U.S.C. § 1983. Section 1983 creates no substantive rights itself but instead provides a remedy for deprivations of rights established elsewhere. To state a claim under § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

### A.    Whether the Plaintiff States a Deprivation of Rights

The plaintiff in this case does not identify which of his constitutional rights he believes have been violated other than to assert that the denial of the opportunity to be interviewed for the Cook Chill job was discriminatory. The court liberally construes the complaint as asserting both a due-process claim and an equal-protection claim based on disparate treatment.

The complaint, however, fails to state a due-process claim for which relief may be granted, because a prisoner has no constitutionally protected liberty or property interest in a prison job assignment or security classification. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that prisoner classification and eligibility for rehabilitation programs in federal prisons are not directly subject to "due

process" protections); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) ("[T]he Constitution does not create a property or liberty interest in prison employment. . . ." (citations omitted); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (holding that prisoners have no constitutionally protected liberty or property interests *per se* in their prison job assignments). *See also Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("The plaintiffs have not set out a procedural due process claim because they do not allege that they have suffered an atypical or significant hardship, as required by *Sandin v. Conner*, 515 U.S. 472, 484 (1995). They have not set out a substantive due process claim because the conditions alleged to exist at [the prison], even if proven, would not meet the 'shock the conscience' standard applicable to such claims." (citation omitted)). Thus, assuming the plaintiff intended to state due-process claims based on his security classification and/or the denial of the Cook Chill job placement, such claims are subject to dismissal for failure to state a claim for which relief may be granted under 42 U.S.C. § 1983.

The plaintiff's discrimination claim is subject to a different analysis. The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To state an equal protection claim, a plaintiff must adequately plead that the defendant treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). *See also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). When disparate treatment is shown, the applicable equal-protection analysis is determined by the classification used by government decision-makers. *Id.*

Broadly construed in conjunction with the grievance documents attached to it, the complaint pleads disparate treatment insofar as the plaintiff alleges that similarly situated inmates convicted of the same or worse charges and with the same classification level have been permitted to interview with and work for TRICOR. Although the plaintiff's allegations do not implicate fundamental rights or a suspect classification, they do suggest that the disparate treatment was not rationally related to the plaintiff's

classification, because similarly situated inmates have allegedly been reclassified once they passed a test and were accepted for the TRICOR placement.

For purposes of the initial review, the Court finds that the plaintiff has adequately alleged the violation of a constitutional right.

### B.        Whether the Deprivation Was Caused by a State Actor

As set forth above, the plaintiff names as defendants Leslie Crumpton, a TRICOR employee (or volunteer); Christy Mathis; Lt. Gregory Leonard; Sgt. Kayser Nolton, who signed off on the initial denial of the plaintiff's grievance; Warden Wayne Carpenter; Michael Holloway; Stevenson Nixon; Jason Woodall, TDOC Deputy Commissioner of Operations; Benjamin Bean; TDOC Commissioner Derrick Schofield; and David Harp. All the defendants appear to be state employees, and the court presumes that they are all state actors for purposes of § 1983. That conclusion does not end the discussion, however.

The plaintiff does not specifically indicate whether the defendants are sued in their individual or official capacity. To establish the liability of any defendant in his or her individual capacity, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability." (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)).

Further, merely denying a grievance or affirming the denial of a grievance does not give rise to liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983"); *Martin v. Harvey*, 14 F. App'x 307, 309–10 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of

misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

In this case, the only defendants actually involved in the events giving rise to the plaintiff's filing of grievances and this complaint are Leslie Crumpton and Christy Mathis. The court will permit the equal-protection claim to proceed against these defendants in their individual capacity.

Sgt. Kayser Nolton initially denied the plaintiff's grievance. (ECF No. 1, at 38.) Although the grievance committee recommended upholding the plaintiff's grievance, Warden Wayne Carpenter overruled that recommendation and upheld the denial of the grievance based on the Deputy Commissioner's finding that "the inmate does not have the correct custody level." (ECF No. 1, at 9.) Jason Woodall, as Deputy Commissioner of Operations, upheld the warden's decision on January 6, 2015. (ECF No. 1, at 8.). Insofar as these actions consisted of simply overruling the plaintiff's grievances and appeals relating to the initial decision by Crumpton and Mathis, these individuals were not personally involved in that initial decision. The court will therefore dismiss the individual-capacity claims against these defendants.

Defendants Michael Holloway, Stevenson Nixon, Benjamin Bean, Commissioner Derrick Schofield, and David Harp are not even referenced in the complaint or, to the court's knowledge, the attachments to the complaint. There is no indication that they had any personal involvement in this decision. Thus, to the extent the plaintiff intended to assert individual-capacity claims against these defendants, such claims will be dismissed as well.

The plaintiff does not allege that his injury arose from the enforcement of an unconstitutional policy or practice. To the contrary, he alleges that he was treated differently from other similarly situated prisoners based upon Crumpton's and Mathis's anomalous application of the policy to him as opposed to the manner in which it was applied to other prisoners. The official-capacity claims are therefore also subject to dismissal.

## V.    CONCLUSION

For the reasons set forth herein, the court will permit the individual-capacity claims to proceed against defendants Leslie Crumpton and Christy Mathis. The official-capacity claims against them and all claims against the remaining defendants will be dismissed for failure to state a claim for which relief may be granted. An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge